MINNIE MARTINS, APPELLEE, v. SCHOOL DISTRICT ET AL., APPELLANTS.

FILED MAY 5, 1917.    No. 19470.

Schools and School Districts: TUITION: INJUNCTION. Minnie Martins, plaintiff, a minor child, by her next friend, enjoined the defendant school district from refusing to permit her to attend its public school without paying tuition. The testimony examined, discussed in

the opinion, and *held*, that plaintiff was qualified to attend the public school in the defendant school district without the payment of tuition on the ground of residence and on the ground that a married sister, resident in the district and with whom plaintiff lived, stood *in loco parentis* to her.

APPEAL from the district court for Cuming county: GUY T. GRAVES, JUDGE. *Affirmed.*

*A. M. Emley* and *A. R. Oleson,* for appellants.

*Hugo M. Nicholson, contra.*

DEAN, J.

On October 8, 1914, Minnie Martins, who was then 17 years of age, began an action in the district court for Cuming county by her next friend, John Richmond, plaintiff and appellee, to enjoin the officers of School District No. 30 of Wisner, defendants and appellants, from denying to her the privilege of attending the public school without payment of tuition. On final hearing a perpetual injunction was granted, and plaintiff's application for permission to attend the school without the payment of tuition was granted. The defendants have appealed.

Plaintiff is a sister of John Richmond's wife, and for nearly two years before the action was begun had made her home with the Richmonds at Wisner. She argues that her sister stands in the place of a parent to her, and besides maintains that she is a resident of Wisner, and is therefore entitled to attend the public school without charge on either ground. She attended the school of the defendant district throughout the 1913-1914 school year. No tuition was demanded until September, 1914, when a demand was made that $18 tuition be paid for the school year that was past. The demand was not complied with, because it was contended that her permanent home was at her sister's, and also because of plaintiff's claim of residence in the school district. On October 5, 1914, the district by resolution prevented her further attendance until the $18 tuition for the 1913-1914 school year was paid. Then, or at about that time, the board by resolution fixed

the fee for nonresident pupils at 50 cents a week, and required all nonresident pupils to comply therewith. To this demand plaintiff also refused a compliance for the same reason that she refused to pay the charge of $18.

Defendants argue that plaintiff's sister nor any other person stands *in loco parentis* to her at Wisner, and they contend that she is a nonresident of the district. They point out that John Richmond, in pursuance of notice, appeared before the board and promised that all tuition payments that were demanded would be paid, but that he later repudiated his agreement.' Mr. Richmond in explanation frankly admits the most of defendants' contention on this point, but he testified that at the time of his talk with the board he had not then been informed about an arrangement that had long theretofore been made between his wife and plaintiff's father, at or very soon after the death of plaintiff's mother, which provided in effect that the father, in part owing to his bereavement, had placed her in charge of Mrs. Richmond to care for and to educate. When asked if, on discovery, he' ratified his wife's act in the premises, he promptly answered that he did.

Defendants argue that Mr. Richmond should not, after litigation is begun, be permitted to change his ground and mend his hold. The answer to this contention is that the board was notified by him of his change of ground before any action was taken by it, and besides, in the absence of authority or of ratification by plaintiff, he could not bind her by any promise or agreement he might make, and the record shows he was without such authority, and it is not shown that she ratified his unauthorized act. Plaintiff was emphatic in her testimony that she never authorized John Richmond to make any statement to the board in her behalf about the payment of tuition, and that she never knew of his talk with the board on this subject until about the time suit was begun. The real issue in the case is whether Minnie had a right to go to defendants' school

without the payment of tuition.   To this all else is subordinate.   If Mrs. Richmond stood in the place of a parent to her she had that right  or if plaintiff was a resident in good faith of the district she had a right to attend its public school.   In either event, in view of the surrounding circumstances, John Richmond's promise or attitude or change of ground has nothing to do with a proper determination of the case.

The case was tried on June 8, 1915.   Her mother had been dead eleven years.   Her father and stepmother, to whom at that time he had been married about eight years, lived at Scribner, which had then been their residence for many years.   During all of the time that plaintiff lived with her sister she had not been at her father's home, distant about 30 miles, to exceed perhaps three times, and then for only a few hours between trains, and never remaining there over night.   It is in evidence that her sister furnished plaintiff with practically all of her clothing and with a little spending money ever since her mother died, and for all of the time that plaintiff was in her home at Wisner she furnished her with food, lodging and clothing free of expense to her father.   Besides attending school, plaintiff worked in the telephone office at Wisner, where Mrs. Richmond's husband was manager.   For this she received wages, which she testified she was saving to be used by her in obtaining an education.   It does not appear that she went to Wisner mainly to go to school, but that her school attendance there was merely an incident in the life of a motherless child.

That plaintiff's father had given to Mrs. Richmond the entire control of plaintiff nearly two years before this action was begun is established by the testimony of Mrs. Richmond, of Minnie, and of her father.  Plaintiff testified, too, that her father told her at Scribner, shortly before she went to her sister's to live, that she must make her own living or leave home.   Her father never gave her any money or clothing after she left his home, and he tes-

tified that his daughter furnished Minnie with nearly, if not quite, all her clothing. ever since her mother died. Mr. Martins testified that on one occasion he went to Wisner for the purpose of having Minnie return. with him to Scribner to assist in the care of her stepmother, who was ill, but that Mrs. Richmond would not let his daughter go. He said her refusal was based in part on the ground that he had formerly relinquished control of Minnie to Mrs. Richmond, and that he acquiesced in her refusal to let her return with him for that reason, and that he returned to Scribner alone. Defendants point out that the testimony of Mr. Martins at the final hearing differed from an affidavit and other of his testimony at an earlier period of the controversy. When it is remembered he speaks a foreign tongue and that a part of the former testimony was taken through the medium of an interpreter, the apparent discrepancy loses much of its force as a challenge of its probative value.

Section 6800, Rev. St. 1913, among other things, provides that the school board may "make such rules and regulations as they may think needful for the government of the schools and for the preservation of the property of the district, and also to determine the rates of tuition to be paid for nonresident pupils attending any school in the district except nonresident pupils attending the high school without charge." Statutes pertaining to our public schools should be liberally construed to the end that all persons of school age may enjoy their privileges. A rule of a board of education that would prevent plaintiff or any person similarly situated from attending its public schools cannot be enforced. From the record it clearly appears that plaintiff is qualified to attend the public school at Wisner. *State v. School District,* 55 Neb. 317; *State v. Selleck,* 76 Neb. 747. Solicitude for the education of its youth has always been characteristic of Nebraska. It is a settled policy of the state that every person of school age shall have an opportunity to attend its free schools. Section 6, art VIII of the Constitution, follows:

"The legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years." The district court rightly interpreted the constitutional provision pertaining to this subject and the intent of the laws enacted in pursuance thereof.

The judgment of the district court is right, and is in all things                                           AFFIRMED.

SEDGWICK, J., not sitting.