Douglas CRAIG, et al., Plaintiff,

v.

SELMA CITY SCHOOL BOARD,
et al., Defendant.

Civ. A. No. 90–0777–AH–S.

United States District Court,
S.D. Alabama, N.D.

Aug. 25, 1992.

Bruce Boynton, Selma, Ala., for plaintiff.

Larry Bradford, Birmingham, Ala., for defendant.

## ORDER

HOWARD, Chief Judge.

This matter is before the Court on motions for summary judgment filed by all parties. The defendants filed their "Amended Motion for Summary Judgment" [Doc. # 64] on January 2, 1992. The plaintiffs responded on February 3, 1992, with "Plaintiffs' Response to Defendants' Motion for Summary Judgment" [Doc. # 72], incorporating the "Plaintiffs' Motion for Summary Judgment" [Doc. # 73] and accompanying brief [Doc. # 74] filed the same day.

The Court has fully reviewed the motions, the briefs and evidentiary materials filed in support of and in opposition to the motions, and all other pertinent materials in the file. For the reasons that follow, the Court concludes that, except for Count 14 of the Amended Complaint, the defendants are entitled to judgment as a matter of law. Accordingly, the defendants' "Amended Motion for Summary Judgment" [Doc. # 64] is GRANTED as to all portions of the Amended Complaint except Count 14, and the "Plaintiffs' Motion for Summary Judgment" [Doc. # 73] is DENIED in its entirety.

## I. FINDINGS OF FACT [1]

This lawsuit began on October 3, 1990. The original plaintiffs were Douglas Craig, Shinether Craig, Jerry Harris, Sametra Peasant, Sonya Brown, Tonya Brown, and John Dubose, all students at Selma High School. The original defendants were the Selma City School Board, James H. Carter in his official capacity as Interim Superintendent of the Selma City Schools, F.D. Reese in his official capacity as principal of Selma High School, Ralph Hobbs in his capacity as attorney for the Selma City School Board, the State Board of Education, and Wayne Teague in his official capacity as Superintendent of the State Board of Education. Of the original plaintiffs, John DuBose was dismissed on his own motion on July 1, 1991. [Doc. # 51] Of the original defendants, the State Board of Education, Wayne Teague, and Ralph Hobbs have all been dismissed from the case. [Docs. ## 19, 33, 36]

The incidents giving rise to this lawsuit occurred in the Fall of 1990. After a Selma High School football game on September 7, 1990, the plaintiffs became involved in an altercation with another group of students. At about 1:30 a.m. on the morning after the game, Thelma Craig, the mother of two of the plaintiffs, telephoned the defendant Reese, the Principal of Selma High School, to inform him of the fight at the football stadium. Mrs. Craig and Evalina Peasant, along with the plaintiff students (the "Craig group"), arrived at Selma High School on September 10, 1990 at approximately 7:40 a.m. and were in-

1. These Findings of Fact are taken from the Agreed Facts in the proposed Joint Pretrial Order submitted and signed by representatives of all parties. [Doc. # 57]

structed by Reese to go to the conference room adjacent to his office.

Principal Reese met with the Craig group for approximately 30 minutes and at the conclusion of the conference instructed them to remain in the conference room. While the Craig group was meeting with Principal Reese, the other people involved in the post-game brawl (the "Ford group") arrived for a conference. As the Craig group left the conference room renewed fighting erupted between the Craig group and the Ford group. During the melee Principal Reese's office and his secretary's desk and typewriter suffered substantial damage.[2]

The day after the altercation in Principal Reese's office, each plaintiff received a written notice from Reese informing the student that the student would be suspended for five days for "fighting/altercation during school." Subsequently, on the recommendation of Principal Reese that the students be expelled, the plaintiffs or their parents or guardians received a letter dated September 14, 1990 from Selma School Superintendent Carter informing them that they were charged with a Class III violation of the Code of Conduct, namely, "inciting, leading or participating in major disruptions which interfere with the academic program and/or result in damage to private or public property or personal injury."[3]

The letter from Carter notified the plaintiffs of Reese's recommendation, of the date of a scheduled expulsion hearing, that they had a right to attend the expulsion hearing, that they had a right to legal counsel at the hearing, that they had a right to present witnesses at the hearing, and that they had a right to cross-examine the superintendent's witnesses.

The expulsion hearing was held by the Selma City School Board on September 20, 1990, at which time Superintendent Carter provided the plaintiffs' attorney with a copy of the Code of Conduct for him to use at the hearing. The plaintiffs' attorney requested but the Board refused to allow an open hearing attended by the press.

During the hearing the Chairman, over the objection of the plaintiffs' attorney, allowed the presentation of hearsay evidence on the grounds that the Board was interested in learning all the facts. At the close of the evidence presented by the complaining parties, the plaintiffs' attorney argued that there was no evidence against Sametra Peasant, Sonya Brown, and Tonya Brown, and that the charges against them should be dismissed. The Board did not agree to dismiss the charges.

This lawsuit was filed before the expulsion hearing was completed, with the plaintiffs seeking and failing to obtain a temporary restraining order. The expulsion hearing was resumed on November 19, 1990.[4] After the hearing the Board expelled Douglas and Shinether Craig and decided that the remaining plaintiffs' suspensions already served were sufficient punishment for their involvement in the matter and allowed them to return to school on "strict conduct probation."[5]

2. Principal Reese signed a warrant against the adults involved in the altercation. Subsequently, Henry Ford's sister and Mrs. Craig were both found guilty of disorderly conduct in Municipal Court and placed on probation. Later the Municipal Court Judge suspended the conviction and sentence against Mrs. Craig.

3. The Code of Conduct provides that commission of a Class III offense may necessitate the involvement of legal agencies and further provides that the Principal will suspend a student committing a Class III offense and may recommend him or her for expulsion.

4. When the expulsion hearing was resumed on November 19, the plaintiffs' attorney incorrectly informed the Board that plaintiff Jerry Harris

was not enrolled in school as a student at the time of the two altercations, causing the Board to discontinue any further consideration of the charge against Harris.

5. The Court is uncertain from the record in this case whether the plaintiffs were absent from school for the entire time period from the incident until the conclusion of the expulsion hearing in November, or for only five days. The hearing, which began roughly when the five-day suspensions were scheduled to conclude, was continued by agreement with the plaintiffs' counsel, and he was to advise the Board as to when and whether the hearing should be reconvened. [Exhibits In Support of Defts. Amended Motion for Summary Judgment, Transcript of September 20, 1990 Selma City School Board

The plaintiffs filed their Complaint predicated on 42 U.S.C. § 1983 in the Middle District of Alabama on October 3, 1990 [Doc. # 5] and a motion for change of venue was granted on October 10. [Doc. # 16] After an amendment and the voluntary dismissal of several counts, the plaintiffs' Amended Complaint alleges nine causes of action against the remaining defendants. The plaintiffs charge that the defendants' failure to inform the plaintiffs of their procedural rights deprived them of due process of law [Count 4], that the expulsion hearing was beyond the authority of the Board and deprived the plaintiffs of a due process right [Count 5], that the defendants' failure to provide the plaintiffs with a copy of the Code of Conduct deprived the plaintiffs of a due process right [Count 6], that the defendants' failure to prove the plaintiffs' knowledge of the Code of Conduct deprived the plaintiffs of a due process right [Count 7], that the defendants' failure to establish a procedure to dismiss an unsupported charge violated the plaintiffs' due process rights [Count 9], that the defendants' failure to allow the plaintiffs to receive the § 16–1–24 report violated their due process rights [Count 12], that the decision of the defendants Reese and Carter to prevent the plaintiffs from receiving their books violated their due process rights [Count 14], that the defendants' failure to provide the plaintiffs with an education deprived them of a due process right [Count 15], and that the imposition of any restrictions on returning plaintiffs violated their due process rights [Count 16].

## II. CONCLUSIONS OF LAW

This action has been filed by the plaintiffs alleging a cause of action under 42 U.S.C. § 1983. The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).

A court may grant a motion for summary judgment only when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). On a motion for summary judgment, a court must review the record, and all its inferences, in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

### A. PROCEDURAL DUE PROCESS CLAIMS

Under the Fourteenth Amendment to the United States Constitution, no state may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Under the doctrine known as "procedural due process," the Fourteenth Amendment requires a two-part analysis. After a citizen shows that he has been deprived of a constitutionally protected "life, liberty, or property" interest through state action, a court must de-

---

Meeting, p. 48 ("TR1, 48")] Afterwards, the Board offered to allow several of the plaintiffs the opportunity to return to school subject to certain conditions, an offer which those plaintiffs refused. [Exhibits In Support of Defts. Amended Motion for Summary Judgment, Transcript of November 19, 1990 Selma City School Board Meeting, p. 6 ("TR2, 6")]. At the conclusion of the hearing in November, Superintendent Carter recommended that the Board allow several of the plaintiffs to return to school rather than expel them, explaining that he felt "they

ha[d] been punished enough by the number of days they ha[d] been out." [TR2, 89] This testimony indicates that the plaintiffs had not returned to school after their initial five-day suspension. In light of the fact that the plaintiffs were only suspended for five days, and that the onus was on the plaintiffs' counsel to see that the expulsion hearing was reconvened, the Court will treat the suspensions as being five-day suspensions, even if as a matter of fact they resulted in the plaintiffs' absence from school for a period of time longer than five days.

termine whether the procedural formalities of that deprivation comport with the requirements of the Due Process Clause. "In short, once it is determined that the Due Process Clause applies, 'the question remains what process is due.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), *quoting Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The Supreme Court has explained that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), *quoting Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

In *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court held that students in state public schools have a property interest in their legitimate entitlement to public education and a reputational liberty interest in not being suspended except for good cause. The Supreme Court determined that these interests are protected by the Fourteenth Amendment to the Federal Constitution, for

> [n]either the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary.

*Goss,* 419 U.S. at 576, 95 S.Ct. at 737. The denial of procedural due process in the suspension or expulsion of students supports a claim for damages by the students under 42 U.S.C. § 1983. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

Under *Goss v. Lopez,* it is clear that the plaintiffs' suspensions and later expulsions deprived them of constitutionally protected liberty and property interests. The question before the Court, therefore, becomes whether the deprivations were accompanied by procedural safeguards sufficient to satisfy the Due Process Clause of the United States Constitution. Evaluated under the standards set out in the relevant precedents, the notice and hearing afforded the plaintiffs in the instant case were adequate and provided the plaintiffs with due process of law.

**1. The Suspensions**

Having decided that the Due Process Clause was implicated, the Court in *Goss v. Lopez* turned to the question of what process was due, and held that

> due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.

*Goss,* 419 U.S. at 582, 95 S.Ct. at 740.

It is undisputed that in the instant case the students were not given any sort of notice or hearing before their initial five-day suspensions. However, it is also undisputed that the suspended students, in the presence of the principal, engaged in a brawl in the principal's office, damaging school property and endangering others nearby. Thus, this case fits within an exception to the pre-deprivation notice and hearing requirement. While it is true that "as a general rule notice and hearing should precede removal of [a] student from school," the *Goss* court recognized that

> there are recurring situations in which prior notice and hearing cannot be insisted upon. Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school. In such cases, the necessary notice and rudimentary hearing should follow as soon as practicable.

*Goss,* 419 U.S. at 582–83, 95 S.Ct. at 740; *see also North American Cold Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (finding no due process violation when there was no pre-deprivation

hearing in an emergency situation because there was an opportunity for a post-deprivation hearing).

The situation in this case appears to be that contemplated by the *Goss* court in formulating its exception to the general rule of prior notice and hearing. Just as Principal Reese feared,[6] the Craig group and the Ford group were apparently unable to encounter one another without the eruption of renewed fighting, and as such they clearly presented "an ongoing threat of disrupting the academic process." The presence of the belligerents at Selma High School posed "a continuing danger to persons or property." Moreover, the students who received five-day suspensions were soon thereafter participants in an expulsion hearing, satisfying *Goss*'s requirement that "notice and [a] rudimentary hearing [ ] follow as soon as practicable." Accordingly, there was no due process violation regarding the suspension of the plaintiffs.

### 2. The Expulsions [7]

█ Different forms of punishment of schoolchildren may require different amounts of process. *Compare Goss, supra,* (some notice and hearing generally required before short suspension) *with Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (no notice and hearing required before infliction of corporal punishment if state common-law remedies are fully adequate to afford due process). The Supreme Court made clear that its decision in *Goss v. Lopez* applied only to short suspensions, and that "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Goss,* 419

U.S. at 584, 95 S.Ct. at 741. The Eleventh Circuit applied *Goss v. Lopez* in such a context in *Nash v. Auburn University,* 812 F.2d 655 (11th Cir.1987), a case involving the expulsion of two veterinary students for cheating.

Examining the constitutional requisites of the timing and content of the notice before the hearing, the Eleventh Circuit acknowledged that "[t]here are no hard and fast rules by which to measure meaningful notice." 812 F.2d at 661. In that case the court determined that the plaintiffs had waived any lengthier notice than was given but found the total of about six days to have been reasonable anyway. Regarding the content of the notice, the court held that "[t]here is no constitutional requirement that, to provide them an opportunity to respond, [students facing an expulsion hearing] must [ ] receive[ ] any more in the way of notice than a statement of the charge against them." 812 F.2d at 663.

Turning to the procedures at the hearing itself, the *Nash* court noted that student disciplinary hearings need not necessarily involve the cross-examination of witnesses, for "[w]here basic fairness is preserved, the [Circuit] has not required the cross-examination of witnesses and a full adversary proceeding." 812 F.2d at 664. As the court elaborated, "[d]ue process requires that [the students] have the right to respond [to the charges against them], but their rights in the academic disciplinary process are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal case." *Id.; Cf. New Jersey v. T.L.O.,* 469 U.S. 325, 105

---

6. Principal Reese testified at the expulsion hearing that after meeting with the Craig group, I said, make sure that you stay inside the conference room until I return until I clear the hall to make sure that there were no students in the hall that could possibly cause any type of confrontation because after they explained to me the nature of what transpired there at the stadium, then I felt really that the possibility of some altercation might take place when students would come into the building in the morning or if they would be passing to their first period class. [TR1, 33]

7. Only Douglas and Shinether Craig were in fact expelled, and the Court is of the opinion that none of the other plaintiffs have standing to attack the procedures used at the expulsion hearing. Accordingly, summary judgment is due to be granted in favor of the defendants on the procedural due process claims regarding expulsion against all plaintiffs except Douglas and Shinether Craig for that reason. Count Nine is an allegation by Sametra Peasant, Sonya Brown, and Tonya Brown only, and summary judgment is therefore due to be granted against the plaintiffs on that count in its entirety.

S.Ct. 733, 83 L.Ed.2d 720 (1985) (recognizing that public schoolchildren have lesser Fourth Amendment rights than the public generally). The court also noted that an impartial decision-maker is a requisite procedural safeguard under the Fourteenth Amendment. 812 F.2d at 665.[8]

Applying these rules, the Court finds that the procedures surrounding the expulsion hearing comported with the requirements of the Fourteenth Amendment's Due Process Clause.

 The plaintiffs complain that the defendants failed to inform the plaintiffs of their procedural rights regarding the expulsion hearing. However, the parties' agreed facts indicate that the plaintiffs were notified of Reese's recommendation of expulsion, of the date of a scheduled expulsion hearing, that they had a right to attend the expulsion hearing, that they had a right to legal counsel at the hearing, that they had a right to present witnesses at the hearing, and that they had a right to cross-examine the superintendent's witnesses. All that is constitutionally required of notice of an expulsion hearing is that students receive "a statement of the charge against them," *Nash, supra,* 812 F.2d at 663, and the notification of procedures in this case did not violate due process of law. Moreover, the timing of the notice, given five days before the hearing, is acceptable under *Nash.*

 Likewise, the alleged failure of the Board to provide the plaintiffs with a copy of the Code of Conduct before the beginning of the expulsion hearing would not support a claim of a due process violation. It is undisputed that Superintendent Carter provided the plaintiffs' attorney with a copy of the Code of Conduct for him to use at the hearing on September 20, and that the hearing was interrupted and was not resumed until November 19. Accordingly, the plaintiffs had two months time in which to review the Code of Conduct.

The allegation that the defendants failed to prove the plaintiffs' knowledge of the Code of Conduct and in so doing deprived them of a due process right borders on the frivolous. The Court doubts whether there is any school in the United States where fighting is not a serious infraction of the rules, or whether there is any schoolchild in the United States who is unaware of the fact that fighting is misconduct. The Court is of the opinion that to prevail on this claim the plaintiffs would be required to satisfy the trier of fact that they were reasonably unaware of any rule against fighting at school and therefore were unable, through ignorance, to conform their conduct to the rules prescribed by the school. The plaintiffs have come forward with no evidence to this effect, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) ("the plain language of Rule 56(c) mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case"), and in fact apparently indicated to Principal Reese at their September 10 meeting with him that they knew the rules governing their conduct at school.[9]

 The plaintiffs' claim that the Board acted beyond its authority in conducting

---

**8.** These specific rules announced by the Eleventh Circuit are derived from the general test of the adequacy of any procedure used in deciding whether to deprive one of his due process rights, first laid down by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In analyzing the procedures used in the instant case, this Court must fill in any gaps in the Eleventh Circuit's inexhaustive list by resort to the more general *Mathews* test:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action;

second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 334–35, 96 S.Ct. at 903.

**9.** At the expulsion hearing, Thelma Craig, the mother of several of the plaintiffs, stated that "the children told [Reese] they knew the rules and stuff like that." [TR2, 81]

the expulsion hearing also appears clearly to be without merit. Under Alabama law,

> [t]he city board of education is [ ] vested with all powers necessary or proper for the administration and management of the free public schools within such city
>
> . . .

Ala.Code § 16–11–9. Thus, Alabama law provided the Board with ample authority to conduct the expulsion hearing in this case.

■■■■ The plaintiffs also charge that the failure to allow them to receive a copy of the § 16–1–24 report violated their due process rights.[10] Section 16–1–24(c) of the Alabama Code requires that a principal file a written report of certain incidents with the superintendent within 72 hours of the incident. The statute does not provide that the student involved in the incident may receive a copy of the report, and the plaintiffs have cited no authority suggesting that students have a constitutional right to access to the report.[11] The plaintiffs' Complaint states that obtaining the report was necessary to prepare to cross-examine Reese and to obtain the names and addresses of other witnesses to the incident. However, the Eleventh Circuit has made clear that a student has no constitutional right to cross-examine witnesses at an expulsion hearing, *Nash, supra,* 812 F.2d at 664, so that a student clearly can have no federal right to obtain materials to prepare for cross-examination. Moreover, because the students were present at the altercation and presumably able to identify witnesses on their own, the defendants' failure to provide them with the § 16–1–24 report did not interfere with their right to respond to the charges against them.[12] Thus, even if under state law the defendants should have provided a copy of the § 16–1–24 report to the plaintiffs, the Court finds that providing such a report is not a requisite of providing a fundamentally fair hearing as required by the federal constitution.

■■■■ The Court has reviewed the transcript of the expulsion hearing, and finds nothing therein to suggest that the hearing was not fundamentally fair. The students facing expulsion were clothed with a presumption of innocence.[13] The Board members responded negatively to a question whether they had independent knowledge of the facts of the case which would affect their decision. [TR1, 22–23] While the expulsion hearing did not proceed according to the Federal Rules of Evidence, such is not required to insure due process, *see Loudermill, supra,* 470 U.S. at 546, 105 S.Ct. at 1495 (recognizing that the formality and procedural requisites of a hearing need not be elaborate), and the plaintiffs, represented by counsel, were allowed to cross-examine witnesses although such is not required by the Due Process Clause. *Nash, supra,* 812 F.2d at 664. Principal Reese, a coach named Willie Maxey, Superintendent Carter, and all of the plaintiffs except Douglas Craig testified, as did several of the plaintiffs' parents and siblings, and the Board considered all of this testimony in reaching its decisions.

---

10. The plaintiffs also allege that "there existed no procedure by which plaintiffs could ascertain whether defendant Reese had prepared and submitted a Section 16–1–24 report." [Amended Complaint, Doc. #43, p. 29] However, it is undisputed that Principal Reese submitted such a report to the superintendent. Apparently, the School Board did not receive such a report, [TR1, 55], but the Court is of the opinion that any failure of the Board to receive the report did not deny the plaintiffs due process. In fact, plaintiffs' counsel charged at the hearing that if the Board *had* received the report, then the Board would not be an impartial tribunal. [*Id.*]

11. The Court notes that the students may well have had a statutory right of access to the report under Alabama law if a § 16–1–24 report is a "public writing." Ala.Code § 36–12–40. *But Cf.*

*Stone v. Consolidated Pub. Co.,* 404 So.2d 678 (Ala.1981) (recognizing exceptions to the broad general definition of "public writing"); *Chambers v. Birmingham News Co.,* 552 So.2d 854 (Ala.1989) (same).

12. The Court also notes that apparently the plaintiffs did not attempt to gain access to the § 16–1–24 report before the start of the expulsion hearing. [TR1, 48]

13. Board member Sheila Okoye began the hearing by stating "[t]he attitude of this Board shall be that the students are innocent of the charges until this Board is persuaded by the evidence otherwise." [TR1, 2–3] Board Chairman Dr. Lett reiterated that "no one is considered guilty until it is proven." [*Id.* at 13]

It is important to note that the Court's task in ruling on the competing summary judgment motions regarding federal damages actions based on procedural due process claims is not to review the correctness of the decisions of Principal Reese or the Selma City School Board in deciding to punish the plaintiffs, but to decide whether the procedures employed in reaching those decisions were so inadequate as to rise to the level of a constitutional tort. The Court is convinced that the plaintiffs did have "the opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews, supra,* 424 U.S. at 333, 96 S.Ct. at 902, and that the procedures employed at the expulsion hearing afforded the plaintiffs due process of law as required by the United States Constitution. Accordingly, with respect to the counts alleging a procedural due process violation in the conduct of the expulsion hearing, summary judgment is due to be granted to the defendants and denied to the plaintiffs.

## B. OTHER CONSTITUTIONAL CLAIMS

The plaintiffs have made three claims denominated as "due process" claims which do not appear to be "procedural due process" claims. The Court finds that summary judgment in the defendants' favor is due to be granted on two of these claims as well, and that summary judgment is due to be denied both parties on Count 14.

## 1. Substantive Due Process Failure To Provide Education Claims

The plaintiffs allege in Count 14 that the defendants Reese and Carter denied them due process by preventing them from receiving their books and in Count 15 that "the entire conduct of all defendants, as previously described, has prevented plaintiffs and their class [from] obtaining an education in violation of their right to same as contemplated in Brown." The plaintiffs do not appear in these counts to be complaining of the procedure followed by the defendants in deciding to "deprive them of their right to an education," but rather of the deprivation itself. Thus, the claim seems to be one of a violation of "substantive due process" rather than "procedural due process." *See, e.g., Daniels v. Williams,* 474 U.S. 327, 337, 106 S.Ct. 677, 678, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring) (explaining that the Fourteenth Amendment "contains a substantive component, sometimes referred to as 'substantive due process,' which bars certain arbitrary government actions 'regardless of the fairness of the procedures used to implement them.' ") Because there is no explicit or fundamental constitutional right to an education, these claims are subject to "rational basis" scrutiny.

Clearly, "[p]ublic education is not a 'right' granted to individuals by the Constitution." *Plyler v. Doe,* 457 U.S. 202, 220–21, 102 S.Ct. 2382, 2396, 72 L.Ed.2d 786 (1982), *citing San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 1298, 36 L.Ed.2d 16 (1973). *Brown v. Board of Education of Topeka,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), explaining the importance of public education, states that the opportunity to receive an education, *"where the state has undertaken to provide it,* is a right which must be made available to all on equal terms." 347 U.S. at 493, 74 S.Ct. at 691 (emphasis supplied). The Supreme Court in *Brown* thus held that where a state *chooses* to provide citizens with a public education, the Equal Protection Clause requires that such education be provided equally to all citizens, and that segregation of students based on race violates the Equal Protection Clause. *Brown* nowhere establishes a constitutional obligation on the part of states to provide public education. Likewise, the Supreme Court has recognized that a student may have a property interest in receiving a public education such that *"[h]aving chosen to extend the right to an education* [to a student, a state] may not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred," *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975) (emphasis supplied), but the Supreme Court has not recognized that a person has a constitutionally protected

property interest in an education in the absence of a state's choice to provide one.

■ Because the right to obtain a public education is not explicitly granted to American citizens by the language of the federal constitution and has never been recognized as "fundamental" by the Supreme Court, state action infringing on a person's right to obtain a public education is not unconstitutional under substantive due process analysis as long as that action is directed to a legitimate purpose and is rationally related to achieving that purpose. *See generally West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Cf. Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985) (when a court entertains a substantive due process challenge to an academic decision, it "may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment").

### i. COUNT 15

■ With respect to Count 15, the Court is easily satisfied that there has been no substantive due process violation.[14] The plaintiffs allege that "the entire conduct of all defendants" has deprived them of an education. The purposes of the defendants in seeking to enforce school regulations and to protect other students as well as school property from violence are certainly legitimate. The means chosen to bring about these legitimate purposes, the time-honored methods of suspension and expulsion, clearly have a rational relation to achieving those purposes. Accordingly, there has been no generalized substantive due process violation based on "the entire conduct of all defendants."

### ii. COUNT 14

■ The substantive due process issues surrounding Count 14 are more difficult because the factual record before the Court is incomplete. The only part of the record which deals with Count 14 is a portion of the transcript of the second part of the expulsion hearing. In questioning by plaintiffs' counsel, Principal Reese responded as follows:

Q: ... Reverend Reese, there was a point after the hearing was discontinued that a request was made to you by me that these students that I represent would have a representative to come to the school and get their books for them to study while a final decision would be made by the Board; is that right?

A: That's right.

Q: And you agreed that that could be done; is that right?

A: Yes.

Q: Initially?

A: Initially, yes.

Q: And my question is would you tell us why was that request, why was that decision later changed that they could not receive their books?

A: Well, I submitted that request that you made to me to the superintendent, and, of course, I assume the superintendent speaks for himself. He indicated to me that possibly would not be advisable at that point. He can speak for himself about that.

Q: You were simply told not to do it?

A: Yeah.

Q: It's just that simple?

A: Well, he indicated that he advised not at that point.

[TR2, 21–22] Superintendent Carter did not testify concerning the matter at the expulsion hearing. [*See* TR2, 24–31 (Carter's testimony) ]

If the plaintiffs' claim in Count 14 is a procedural claim, it does not appear from the record what, if any, procedures were employed in deciding that the plaintiffs would not be allowed to retrieve their

---

**14.** If in fact the plaintiffs intend for Count 15 to be a procedural due process claim, it is merely redundant of the preceding counts and lacks merit for the same reason as those counts.

books. If the plaintiffs' claim in Count 14 is a substantive claim, it may well present a due process violation, because the Court cannot at this point ascertain any legitimate governmental end in depriving these students of their books. The defendants indicate in brief that the plaintiffs "were simply refused the right to return to school during the pendency of the hearing to remove their schoolbooks ... [because] [t]here was no sense in escalating an explosive situation ..." [Opposition to Plaintiffs' Motion for Summary Judgment, Doc. # 84, p. 8] The Court is inclined to agree that this explanation would pass substantive due process muster if the plaintiffs themselves were attempting to enter school property, but it appears that perhaps the plaintiffs sought rather to have a representative (such as their counsel) retrieve the books.

Regarding Count 14, the Court is of the opinion that the record is not sufficiently clear as to what the facts are and that neither side has met its initial "burden of showing the absence of a genuine issue as to any material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585 n. 10, 106 S.Ct. 1348, 1355 n. 10, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress and Company,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Accordingly, as to Count 14, the motions for summary judgment filed by both sides are due to be denied.

2. Restrictions On Returning Students: Equal Protection Clause Claim

■ The Court has ruled that the students who were not expelled cannot object to the procedures employed at the expulsion hearing. However, those students also claim that

[t]he placing of any terms, restrictions or conditions on the return of those plaintiffs allowed to resume their education restricted their opportunity to receive an education without being set apart from other students who had done no wrong and constituted an impermissible restraint on their opportunity to receive an education.

[Amended Complaint, Doc. # 43, Count 16, pp. 33–34]

The parties are agreed that Sametra Peasant, Sonya Brown, and Tonya Brown returned to school after the November 19 conclusion of the expulsion hearing on "strict conduct probation," but the parties have not elaborated on what this entails. The school's Code of Conduct defines "disciplinary probation," which the Court presumes to be equivalent to "strict conduct probation," as follows:

Disciplinary probation is a period of time specified by the principal during which a student must correct his/her behavior while abiding by all other school regulations. The staff member involved in the action will assist in monitoring the student's adjustment to the school environment.

[Plaintiff's Motion for Summary Judgment, Doc. # 73, Exhibit 1, p. 7]

■ Although denominated a "due process" claim, Count 16 appears to the Court to be in reality some sort of Equal Protection Clause claim.[15] However, because the "right to an education" is not an explicit or fundamental right, and because the government action complained of does not employ a suspect classification,[16] the imposition of the restraint of "strict conduct probation" on the returning plaintiffs is not unconstitutional so long as the purpose was legitimate and the means were rationally related to the purpose. *See, e.g., Hodel v. Indiana,* 452 U.S. 314, 331, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981). It clearly ap-

---

**15.** If the plaintiffs' claim is in fact a procedural due process claim, the Court finds that the procedures which were adequate to expel the Craigs were *a fortiori* adequate to impose the lesser sanction of "strict conduct probation" on the remainder of the plaintiffs. If the plaintiffs' claim is in fact a substantive due process claim, the analysis in this case would be identical to that for an equal protection claim, and the Court finds no substantive due process violation.

**16.** The plaintiffs' Amended Complaint states that they are black, but the plaintiffs neither allege nor argue that the allegedly unconstitutional treatment they received was related to their race.

pears to the Court that closely monitoring students who have been involved in a series of fights is legitimate, and that "strict conduct probation" is rationally related to achieving this legitimate objective. Accordingly, the Court finds no constitutional violation regarding Count 16.

## C. THE PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT

The plaintiffs' arguments in their brief accompanying their motion for summary judgment do not demonstrate that the plaintiffs are entitled to judgment as a matter of law.[17] The only argument not previously addressed by the Court is the plaintiffs' contention that "the prosecution of plaintiffs for a Class III offense in the Code of Conduct constituted an *ex post factor* [sic] application of a penal regulation, in fact or in spirit, to the extent that plaintiffs' due process right to a fundamentally fair hearing was violated." [Plaintiffs' Brief, Doc. # 74, p. 1] The plaintiffs' Amended Complaint does not allege an *ex post facto* Clause violation. The Court will not address this frivolous issue raised by counsel for the plaintiffs because there is no evidence that any part of the Code of Conduct was amended between the time when the plaintiffs engaged in the conduct for which they were punished and the time of their punishment.

## III. CONCLUSION

For the foregoing reasons, the defendants' "Amended Motion for Summary Judgment" [Doc. # 64] is GRANTED as to all portions of the Amended Complaint [Doc. # 43] except Count 14. The defendants' "Amended Motion for Summary Judgment" is DENIED as to Count 14 of the Amended Complaint. The "Plaintiffs'

17. Among the arguments made by the plaintiffs in their brief in support of their motion for summary judgment is that the board violated Jerry Harris' federal due process rights when it failed to consider what action to take against him after being informed by Harris' attorney that Harris was no longer enrolled at the school. Whether or not this argument has merit, the Court is unable to find a claim for such a violation in the Amended Complaint [Doc. # 43].

Motion for Summary Judgment" [Doc. # 73] is DENIED.

Moreover, the plaintiffs' brief argues that the Board's offer to allow Sametra Peasant, Sonya Brown, and Tonya Brown to participate in an alternative punishment scheme violated those students' federal due process rights. Whether or not this argument has merit, the claim (Count 10 of the Amended Complaint) has been dismissed on the plaintiffs' own motion. [Doc. # 85]