FRANCES LOUISE NICHOLSON, APPELLANT, V. RED WILLOW
COUNTY SCHOOL DISTRICT NO. 0170, ALSO KNOWN AS
TWIN VALLEY PUBLIC SCHOOLS, A POLITICAL SUBDIVISION
OF THE STATE OF NEBRASKA, ET AL., APPELLEES.
699 N.W.2d 25

Filed July 15, 2005.    No. S-03-1296.

Steve Williams and John F. Recknor, of Recknor, Williams &
Wertz, for appellant.

Kelley Baker, Karen A. Haase, and Neal Stenberg, of Harding,
Shultz & Downs, for appellees Red Willow County School
Districts Nos. 0170 and 0109.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN,
McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.
## NATURE OF CASE
Frances Louise Nicholson challenges the constitutionality of
bond issues passed by the voters of two Nebraska school districts
as part of the school districts' reorganization. She argues that the

school districts' combination of the two bond issues violated Neb. Const. art. VIII, § 4.

## BACKGROUND

This case was tried on the following stipulated facts: Nicholson resides and owns property in Red Willow County School District No. 0170 (Twin Valley), a Class II school district. She does not own property in the adjacent Red Willow County School District No. 0109 (Republican Valley), a Class III school district.

On January 29, 2003, the boards of education of Twin Valley and Republican Valley each voted to approve a petition to reorganize the districts with each other. The reorganization petition sought to dissolve both Twin Valley and Republican Valley, effective August 1, and create a single new Class III school district in their place (the reorganized district). The reorganization petition was contingent upon the approval of separate bond issues in both Twin Valley and Republican Valley.

Separate bond elections were held in both school districts on March 25, 2003. The voters of Twin Valley approved, by a vote of 296 to 266, the issuance of bonds by Twin Valley in the amount of $3,495,000 for the purpose of paying the costs of land acquisition, constructing a school building, and providing for necessary furniture and apparatus for such a building. Nicholson voted in the Twin Valley bond election. Republican Valley voters approved, by a vote of 296 to 272, the issuance of bonds by Republican Valley in the amount of $3,495,000 for the same purposes as the Twin Valley bond issue. The eventual issuance of the bonds in each school district was not only contingent upon a successful election in the other school district, but also upon the approval of the reorganization petition as required by law. On May 9, the State Committee for the Reorganization of School Districts (State Committee) approved the reorganization petition.

The aggregate assessed value of all taxable property in Twin Valley was, as last reported by the Red Willow County assessor, $129,187,800. The most recently reported aggregate assessed value of all taxable property in Republican Valley was $86,684,569. In the absence of the reorganization petition, an amount of approximately 21 to 22 cents per $100 of taxable valuation would have been levied on Twin Valley property owners to redeem that school district's bond issue of $3,495,000, while

Republican Valley property owners would have been levied 35 to 36 cents per $100 of taxable valuation to redeem the $3,495,000 bond issue in their school district. However, under the terms of the reorganization petition, the two separate bond issues would be combined for a total bond issue of $6,990,000 and repaid by the property owners of the reorganized district over approximately 22 years. Thus, all property owners in the reorganized district will pay a bond levy in the amount of 26.3 cents per $100 of taxable valuation. The reorganized district's authority to combine the bond issues of Twin Valley and Republican Valley stems from section II(E) of the reorganization petition, which provides in full:

> **E. Bonded Indebtedness and Authority To Issue Bonds.** Neither the Twin Valley Public School District nor the Republican Valley Public School District has any bonded indebtedness existing on the date of the signing of this Petition. However, if the voters of both the existing Twin Valley Public School District and the existing Republican Valley Public School District vote to authorize the issuance of bonds in elections in both school districts, any authority to issue bonds, and any bonded indebtedness created pursuant to such authority which exists on the effective date of the dissolution and reorganization of the existing Twin Valley Public School District and the existing Republican Valley Public School District shall become the authority and/or obligation of the New School District.

Nicholson initiated this action on May 2, 2003. Her complaint sought injunctive relief preventing issuance of the bonds and implementation of the reorganization petition. She also sought a declaration that the reorganization petition and Neb. Rev. Stat. § 79-422(1) (Reissue 2003) are unconstitutional under Neb. Const. art. VIII, § 4.

On October 16, 2003, the district court denied Nicholson's request for declaratory and injunctive relief and dismissed her complaint. Upon Nicholson's motion, the court entered an order nunc pro tunc on November 10, repeating its earlier findings that § 79-422(1) and the merger and bond issues were constitutional and that the bond issues and reorganization petition were "lawful in all respects." Nicholson filed her notice of appeal on November 13, and we moved the case to our docket.

## ASSIGNMENTS OF ERROR

Nicholson assigns that the district court erred in finding that (1) the bond issues and reorganization petition were lawful in all respects, (2) § 79-422(1) is constitutional, and (3) the merger and bond issues of the school districts are constitutional.

## STANDARD OF REVIEW

■ A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *Cox Nebraska Telecom v. Qwest Corp.*, 268 Neb. 676, 687 N.W.2d 188 (2004).

## ANALYSIS

■ In this appeal, Nicholson challenges the constitutionality of bond issues passed by the voters of Twin Valley and Republican Valley as a part of the school districts' reorganization. However, before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues. *Gabel v. Polk Cty. Bd. of Comrs.*, 269 Neb. 714, 695 N.W.2d 433 (2005). After this case was initially argued, we ordered additional briefing and argument on the issue of whether Nicholson's remedy was to appeal the May 9, 2003, decision of the State Committee pursuant to Neb. Rev. Stat. § 79-413(4) (Reissue 2003) or whether Twin Valley's and Republican Valley's reorganization plan is subject to collateral attack. We begin with a review of current Nebraska law governing school reorganizations.

### SCHOOL DISTRICT REORGANIZATION METHODS

There are two methods available to accomplish a school district reorganization: the petition method and the election method.

[I]t is critical that one recognize the distinction between effecting a school reorganization by what is commonly referred to as the "petition method" as opposed to effecting a reorganization by the "election method." The differences are important. While in both instances the electors of the affected districts have a voice, their manner of exercising that voice is significantly different. While the ultimate authority for changing the boundaries by either the petition method or the election method rests with the electors of the several districts involved, the effect of their action is quite

different. Under the petition method, once a sufficient number of legal voters of each district have signed a petition, the superintendent [now the State Committee for the Reorganization of School Districts] must then act in accordance with the statute. See Neb. Rev. Stat. § 79-402 (Reissue 1976) [now codified at § 79-413]. Under the petition form of reorganization, the provisions of the statutes are mandatory and jurisdictional and the failure to comply with the requirements set out in the statutes generally causes the action taken by the county superintendent to be void. See *State ex rel. Larson v. Morrison*, 155 Neb. 309, 51 N.W.2d 626 (1952). Likewise, where proper petitions are filed, it is the mandatory duty of the superintendent to hold a hearing and, if the petitions are sufficient, to change the boundaries as requested. See *School Dist. No. 49 v. Kreidler*, 165 Neb. 761, 87 N.W.2d 429 (1958).

On the other hand, under the election method, a plan of reorganization is not effected until it is submitted at a special election to all the electors of the districts within the county whose boundaries are in any manner changed by the plan of reorganization and approved by a majority of all electors voting within each voting unit included in the proposed plan. § 79-426.15 [now codified at § 79-447]. It is this final special election which causes the reorganization to take place, and requirements regarding the giving of notice and the holding of preliminary hearings prior to the special election, while important, are not jurisdictional.
*Eriksen v. Ray*, 212 Neb. 8, 12-13, 321 N.W.2d 59, 62 (1982).

The election method is governed by the Reorganization of School Districts Act, Neb. Rev. Stat. §§ 79-432 to 79-451 (Reissue 2003). That is *not* the method used by Twin Valley and Republican Valley to create the reorganized district in this case. Instead, our case arose from a reorganization accomplished by the petition method. The statutes governing the petition method are found at Neb. Rev. Stat. §§ 79-413 to 79-422 (Reissue 2003).

PETITION METHOD: PROCEDURES

A reorganization utilizing the petition method may be initiated in one of two ways: by a petition signed by voters or by the actions of the districts' school boards.

Section 79-413(1) allows for the creation of a new school district from other districts by a petition signed by voters. It provides that the State Committee may create a new district if it receives a petition signed by 60 percent of legal voters of each district affected. If the petition is signed by at least 65 percent of legal voters, the State Committee shall approve the petitions.

The reorganized district in this case was created using the second type of procedure authorized by law. That is, the creation of a new school district from other districts may also be initiated and accepted by the school board of any district rather than petitions signed by voters. § 79-415(1). We recognized the distinction between these two procedures in *Leibbrandt v. Lomax*, 228 Neb. 552, 557, 423 N.W.2d 453, 456-57 (1988), where we stated:

> Sections 79-402 [now codified at § 79-413] and 79-402.03 [now codified at § 79-415] provide alternative methods for creation of a new school district from existing school districts. By § [79-413], a school district's legal voters may petition for a change of the district's boundaries. By § [79-415], a school district's board of education may initiate or accept a proposed change of a district's boundaries or the creation of a new district by merger of existing districts. Action under § [79-415] may be characterized as a board-to-board petition for a change of a school district's boundaries or merger of existing school districts. The board-to-board petition is as efficacious as a petition by a school district's legal voters to effect a school district's boundary change or merger involving another district.

Although § 79-413 expressly addresses only petitions for reorganization initiated by voters, a number of its provisions apply equally to petitions initiated by school boards. See § 79-418. Thus, a petition to create a new school district, initiated by a school board, must be submitted to the State Committee, § 79-413(3)(a); must satisfy the requirements of § 79-419 for content; and must be subject to a public hearing before the State Committee, § 79-413(3)(a). A petition submitted to and reviewed by the State Committee "shall not become effective unless it is approved by a vote of a majority of the members of the State Committee." § 79-418.

SCHOOL DISTRICT REORGANIZATION: APPEAL PROCEDURES

One other provision of law that applies to petitions initiated by both voters and school boards is the right of appeal under § 79-413(4). That section provides, "Any person adversely affected by the changes made by the state committee may appeal to the district court of any county in which the real estate or any part thereof involved in the dispute is located."

In her supplemental brief, Nicholson contends that her collateral attack is a permissible means of challenging the constitutionality of the school districts' combination of the bond issues. Nicholson argues that § 79-413(4) is inapplicable because she is not disputing any "changes" made by the State Committee. She claims that the only "changes" made by the State Committee are to the boundaries of the school districts and the appointment of new school board members, neither of which she disputes, and that the State Committee does not authorize the issuance of bonds or the reallocation of indebtedness. In a related argument, she contends that if the State Committee authorized a transfer of debt from Twin Valley and Republican Valley to the reorganized district, her collateral attack is the proper remedy because the State Committee acted beyond its authority, rendering such action by the State Committee void. See *School Dist. of Gering v. Stannard*, 193 Neb. 624, 228 N.W.2d 600 (1975) (county superintendent proceedings may be attacked collaterally when such proceedings are void and county superintendent lacks jurisdiction).

We reject Nicholson's arguments. Section 79-422(1) provides that bonded indebtedness approved prior to the change in school district boundaries "shall remain the obligation of the school district voting such bonds *unless otherwise specified in the petitions.*" (Emphasis supplied.) The reorganization petition in this case did "otherwise specify" under § 79-422(1). Nicholson's objection to the reallocation of debt to the reorganized district was an objection to the terms of the petition. The State Committee's required approval of that petition, containing those terms, was a "change" within the State Committee's jurisdiction and subject to appeal pursuant to § 79-413(4).

Nicholson next argues that she could not have appealed under § 79-413(4) because of our statements in *Kosmicki v. Kowalski*, 184 Neb. 639, 171 N.W.2d 172 (1969). She argues that the only

function of the State Committee is to determine if the petition has been properly executed and that this is a ministerial and not a quasi-judicial function. Thus, citing *Kosmicki*, Nicholson concludes that the State Committee's exercise of a nonjudicial function is not appealable under § 79-413(4) and that her remedy is by collateral attack. See *Kosmicki v. Kowalski, supra* (when county superintendent does not act in judicial manner, then collateral attack offers adequate remedy).

Prior to the enactment of the predecessor to § 79-413(4), the authority currently exercised by the State Committee was exercised by county superintendents. See 1999 Neb. Laws, L.B. 272 (transferring duties from county superintendents to State Committee). No specific provision for appeal of county superintendents' decisions existed until 1963. See 1963 Neb. Laws, ch. 473, § 1, p. 1519. Prior to 1963, judicial review of county superintendents' decisions was solely by petition in error. *School Dist. of Wilbur v. Pracheil*, 180 Neb. 121, 141 N.W.2d 768 (1966).

Allowing judicial review of county superintendents' decisions by petition in error clearly implied that county superintendents acted in a judicial manner. We have held that it is only when the inferior board or tribunal acts judicially that a review by error proceedings is allowed. *Hawkins v. City of Omaha*, 261 Neb. 943, 627 N.W.2d 118 (2001). Where an inferior board or tribunal decides no question of adjudicative fact and no statute requires the board or tribunal to act in a judicial manner, such orders are not reviewable by error proceedings. *Id.* Our cases from that earlier era also *expressly* held that county superintendents acted in a judicial manner. See, *Longe v. County of Wayne*, 175 Neb. 245, 121 N.W.2d 196 (1963) (under petition method, county superintendent acts judicially to certain extent in determining sufficiency of petition); *Lindgren v. School Dist. of Bridgeport*, 170 Neb. 279, 102 N.W.2d 599 (1960) (hearing before county superintendent is quasi-judicial in character); *Dovel v. School Dist. No. 23*, 166 Neb. 548, 552, 90 N.W.2d 58, 62 (1958) ("[t]he hearing before the county superintendent of schools is a quasi-judicial hearing"); *School Dist. No. 49 v. Kreidler*, 165 Neb. 761, 87 N.W.2d 429 (1958).

We departed from that line of authority in *Kosmicki v. Kowalski, supra*. In *Kosmicki*, petitions were submitted to the

county superintendent by the members of the boards of education of the respective school districts. The county superintendent held a hearing to consider the petitions and then approved the petitions. This court stated:

> The appellants contend that the district court for Sherman County has jurisdiction to review by proceedings in error the order of the county superintendent of schools. The issue raised by this contention is whether section 79-402, R. S. Supp., 1967 [codified today at § 79-413(4)], which provides that "any person adversely affected by the changes made by the county superintendent may appeal to the district court of any county in which the real estate is located," requires the district court to review an administrative order which does not rest on any adjudicative fact. We hold that this provision for direct appeal is limited to an order which required the superintendent to act in a judicial manner.
>
> In School Dist. No. 23 v. School Dist. No. 11, 181 Neb. 30[5], 148 N. W. 2d 301 (1967), this court reversed a district court's review of the superintendent's order in an error proceeding. The county superintendent had dissolved and attached one school district to another under section 79-408.01, R. R. S. 1943. This court found that: "In the present case the superintendent decided no dispute of adjudicative fact, and no statute required him to act in a judicial manner. Such orders are not reviewable by error proceedings, which are limited to orders made in the exercise of judicial functions. §§ 25-1901 and 25-1903, R. R. S. 1943; Longe v. County of Wayne, 175 Neb. 245, 121 N. W. 2d 196 [(1963)]. In such circumstances collateral attack offers an adequate remedy. . . ." The county superintendent of Sherman County was required to determine only whether the signatures on the petition were valid under section 79-402, R. R. S. 1943, and accordingly had no dispute of adjudicative fact before her.

(Citations omitted.) *Kosmicki v. Kowalski*, 184 Neb. 639, 642-43, 171 N.W.2d 172, 174 (1969).

Without citing *Kosmicki*, we returned to our pre-*Kosmicki* line of authority in *School Dist. of Gering v. Stannard*, 193 Neb. 624, 228 N.W.2d 600 (1975). There, a petition in error was brought

against the determination by the county superintendent transferring real property from one district to another. We stated that this court had

> considered such proceedings on many occasions. It has held that the hearing by the county superintendent to determine the sufficiency of the petitions is judicial in nature . . . ; that if the petitions are legally sufficient, the county superintendent has the jurisdiction and the mandatory duty to order the requested change in boundaries . . . ; that judicial review of the county superintendent's action is by petition in error and that such proceedings may be attacked collaterally when such proceedings are void and the county superintendent lacks jurisdiction . . . .

*Id.* at 628-29, 228 N.W.2d at 605.

Obviously, *Kosmicki* is an anomaly in our school reorganization jurisprudence. Nicholson has cited to no other case but *Kosmicki* for the authority that the State Committee, in determining the sufficiency of a petition, does not act in a quasi-judicial manner. *Kosmicki v. Kowalski, supra,* is hereby disapproved.

█ Our review of the statutes currently in effect supports our conclusion that the State Committee may consider the substance of a petition initiated by school boards, therefore acting in a quasi-judicial manner. Section 79-418 specifically subjects petitions initiated by school boards to approval by the State Committee. As we have noted, determining the sufficiency of signatures on a voter-initiated petition is a quasi-judicial function. *Dovel v. School Dist. No. 23,* 166 Neb. 548, 90 N.W.2d 58 (1958). In addition to determining the sufficiency of signatures, the State Committee must also evaluate a petition against the requirements of § 79-419. That statute prescribes the content of a petition, including, among other things, a "summary of the terms on which reorganization is to be made between the reorganized districts." § 79-419(1)(b). With the present case in mind, such terms would include any reallocation of debt pursuant to the authority granted by § 79-422. Thus, the State Committee's evaluation of the reorganization petition presented the first opportunity for Nicholson to object to the school districts' reallocation of indebtedness. The State Committee's subsequent approval of the petition, including the terms Nicholson took exception to, "adversely affected"

Nicholson within the meaning of § 79-413(4). She was thus required to challenge the State Committee's approval of the petition by an appeal pursuant to § 79-413(4), or, alternatively, a petition in error. See *Moser v. Turner*, 180 Neb. 635, 144 N.W.2d 192 (1966) (review of county superintendent's decision could be sought by appeal or petition in error).

An action for declaratory judgment does not lie where another equally serviceable remedy is available. *Galyen v. Balka*, 253 Neb. 270, 570 N.W.2d 519 (1997). One who has failed to pursue a full, adequate, and exclusive statutory remedy is not afforded an additional remedy under the Uniform Declaratory Judgments Act. *Id.* Rather than seeking review by appeal or by petition in error, Nicholson filed this improper collateral attack, seeking injunctive and declaratory relief, on May 2, 2003—1 week before the reorganization petition was approved by the State Committee. Because Nicholson filed an impermissible collateral action, we conclude that we do not have jurisdiction over Nicholson's appeal.

APPEAL DISMISSED.