CITIZENS OF DECATUR FOR EQUAL EDUCATION ET AL., APPELLANTS,
v. LYONS-DECATUR SCHOOL DISTRICT ET AL., APPELLEES.

739 N.W.2d 742

Filed October 5, 2007. No. S-06-159.

David V. Drew and Gregory P. Drew, of Drew Law Firm, for appellants.

Karen A. Haase and John Selzer, of Harding, Shultz & Downs, for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

In 1984, the former Decatur and Lyons, Nebraska, school boards petitioned to dissolve the Decatur School District and add its territory to the Lyons School District.[1] In 2005, the appellants, a coalition of parents and taxpayers in Decatur (Coalition), sued the reorganized Lyons-Decatur School District and the school board members (collectively the school district).

---

[1] See Neb. Rev. Stat. § 79-402.03 (Reissue 1981). See, also, *Nicholson v. Red Willow Cty. Sch. Dist. No. 0170*, 270 Neb. 140, 699 N.W.2d 25 (2005) (explaining petition procedures by voters and school boards).

The Coalition sought to enjoin the school district from moving grades four through six from Decatur to Lyons. The Coalition alleged that the reduction in classes at the Decatur school breached the previously adopted merger petition because the school district failed to follow the required voting protocol set out in the merger petition. It also alleged that the school district violated the Coalition members' substantive due process and equal protection rights because the school district was operating the Decatur school without equal grades, teachers, facilities, and educational opportunities. The district court granted the school district's summary judgment motion on all the Coalition's claims and dismissed the Coalition's complaint with prejudice.

We will set out our reasoning with specificity in the following pages, but, briefly stated, we hold that (1) the voting requirements in the merger petition that the Coalition relies on are unenforceable and (2) the free instruction clause of the Nebraska Constitution does not confer a fundamental right to equal and adequate funding of schools. Applying the rational basis analysis, we conclude the school district's action advanced a legitimate educational goal. Accordingly, we affirm.

## I. BACKGROUND

### 1. REORGANIZATION PETITION

In 1984, the school boards of the Lyons School District, a Class III district, and the Decatur School District, a Class II district,[2] filed a reorganization petition.[3] The petition sought to enlarge the boundaries of the Lyons School District to include the territory of the Decatur School District. Paragraph IV(A) of the reorganization petition provided:

> An attendance center for elementary students (kindergarten through sixth grade) shall be maintained in the existing Decatur School District facility until such time as the legal voters and electors of the former Decatur School District . . . and the Board of education vote by majority vote to discontinue the attendance center or until such time as all of the members of the board of education of the enlarged

---

[2] See Neb. Rev. Stat. § 79-102 (Reissue 1981).

[3] See Neb. Rev. Stat. § 79-402 (Reissue 1981).

Lyons School District vote unanimously to discontinue the attendance center.

## 2. SCHOOL BOARD MOVES GRADES FOUR THROUGH SIX TO LYONS, AND COALITION RESPONDS

In April 2004, the school district's superintendent, F.J. Forsberg, mailed an informational letter to patrons explaining the district's financial problems. Forsberg stated that the school district had lost significant state aid over the previous 4 years. He projected more losses for the upcoming school year because of changes in the school aid formula, declining enrollment, and an economic downturn. He further projected that the school district would continue to lose state aid through 2007 because of declining enrollment. He explained that the district had attempted to meet the deficits by several cost-saving measures: (1) reducing building maintenance, (2) not hiring for certain teaching positions, (3) combining grades at the Decatur school where student enrollment had dropped, (4) cutting building and instructional supplies, and (5) reducing the budget reserve. The district proposed similar cuts for the 2004-05 school year. He included a list of cost-saving measures the school board was considering, including moving part, or all, of the Decatur school to Lyons.

In January 2005, the school board rejected a motion to close the Decatur school. It voted 6 to 3, however, to operate it only for kindergarten through grade three and to move grades four through six to Lyons. In April, the Coalition filed this action.

The Coalition sought a temporary and permanent injunction to stop the school district from moving grades four through six to Lyons without obtaining the required votes. It also sought a declaration that the school district's action (1) was void because it violated the merger petition, (2) denied its members procedural due process, and (3) violated its members' substantive due process and equal protection rights by operating the Decatur school without "individual teachers for each grade, equal facilities, and equal educational opportunities."

## 3. TEMPORARY INJUNCTION HEARING

At the temporary injunction hearing, Forsberg testified that the school district had lost about $580,000 in state aid since

1999. He also stated that the Decatur school had experienced a larger drop in enrollment than the Lyons school. He stated that 3 or 4 years before, the board began eliminating some positions and hours at Lyons. It also began combining some grades at Decatur. Having few cost-saving options left, the board decided to move Decatur's grades four through six to Lyons. He stated that the Coalition's members were present at school board meetings when the board discussed cutting costs and that the Coalition's attorney addressed the board on these topics.

At the hearing, Forsberg presented a summary from school census reports which showed the Decatur school had considerably fewer students than Lyons. In Decatur, 36 students were then enrolled in grades kindergarten through six, and he projected Decatur would have 17 students in grades kindergarten through three the next year. In contrast, Lyons had 111 students enrolled in grades kindergarten through six, and he projected Lyons would have 52 students in grades kindergarten through three the next year. Forsberg testified that moving grades four through six from Decatur to Lyons would save the school district more than $200,000.

Forsberg stated that beginning with the 2004-05 school year, the school district bussed all students under grade seven in special education from Decatur to Lyons. Lyons and Decatur are 15 miles apart, and the commute time for students by bus is 25 to 30 minutes. After the hearing, the district court determined that the Coalition had failed to establish a clear right to relief and denied its request for a temporary injunction.

### 4. SUMMARY JUDGMENT HEARING ON COALITION'S VIOLATION OF MERGER PETITION AND PROCEDURAL DUE PROCESS CLAIMS

The Coalition moved for summary judgment on its first and second causes of action: breach of the merger petition and violation of its members' procedural due process rights. In July 2005, the court heard the summary judgment motion. The school district argued that the merger petition conflicted with what is now Neb. Rev. Stat. § 79-419(2) (Reissue 2003 & Cum. Supp. 2006). It argued that paragraph IV(A) exceeded the former Lyons and Decatur school boards' authority in two ways.

First, the school district argued that the merger statute allowed the merging school boards to require a vote by electors in the reorganized district who are served by a school. But it did not authorize a vote by electors in a former school district, as required by paragraph IV(A). Second, it argued that the merger statute allowed the former school boards to require a majority vote by electors before closing a school, but it did not authorize a majority vote before discontinuing any grades at a school.

The school district also argued it had provided due process. It argued that due process required only notice and an opportunity to be heard at the meeting when the school district discussed cost-saving measures.

The court denied the Coalition's partial summary judgment motion regarding its first and second causes of action. In addition, relying on *In re Freeholders Petition*,[4] the court granted summary judgment to the school district on those causes of action. The Coalition appealed, but the Nebraska Court of Appeals dismissed the appeal for lack of jurisdiction.[5]

### 5. SUMMARY JUDGMENT HEARING ON COALITION'S EQUAL PROTECTION AND SUBSTANTIVE DUE PROCESS CLAIMS

On remand, the Coalition moved for a final judgment order under Neb. Rev. Stat. § 25-1315(1) (Cum. Supp. 2006), and the school district moved for summary judgment on the Coalition's third and fourth causes of action: violation of its members' equal protection and substantive due process rights. At the hearing, the Coalition submitted affidavits stating that (1) the school district had made financial cuts to the Decatur school, while providing improvements and benefits for the Lyons school, and (2) this funding deprivation had caused a decline in enrollment at Decatur as the facilities became inferior to those in Lyons. A former teacher stated in an affidavit that parents of children in the Decatur school had been opting to send their children to Lyons. She stated that the parents did not believe the children were receiving an equal education.

---

[4] *In re Freeholders Petition*, 210 Neb. 583, 316 N.W.2d 294 (1982).

[5] *Citizens of Decatur v. Lyons-Decatur Sch. Dist.*, 14 Neb. App. xlv (No. A-05-1127, Oct. 13, 2005).

The Coalition argued that the school district's unequal funding of the Lyons and Decatur schools violated its members' equal protection and substantive due process rights. To support those constitutional claims, the Coalition argued that Nebraska's free instruction clause[6] provided a fundamental right to an education equally or proportionally funded compared with other schools in the same district. It further argued that the school district's underfunding of the Decatur school had deprived those students of their substantive due process rights.

The school district countered that the free instruction clause did not provide a fundamental right to have schools in the same district equally or proportionately funded. It further argued the Coalition did not have a fundamental right to identical facilities or offerings as other schools or to choose where a child attends school. Finally, it pointed out that the Coalition did not allege the school district had failed to educate Decatur children or that it had charged them tuition. Absent a fundamental right, the school district argued that the school district had offered a rational basis for moving the grades to Lyons.

In February 2006, the court granted the school district's motion for summary judgment on the Coalition's equal protection and substantive due process claims. It denied the Coalition's motion for final judgment as moot and dismissed the Coalition's complaint with prejudice.

## II. ASSIGNMENTS OF ERROR

The Coalition generally assigns that the district court erred in granting summary judgment for the school district on all four of its causes of action. More specifically, it assigns, restated and renumbered, that the court erred in failing to (1) determine that the merger petition was legally enforceable and required the school board to maintain the Decatur school with grades kindergarten through six unless a majority of the voters in the former Decatur School District or every member of the school board voted for discontinuance of the school; (2) find that the school board breached the merger petition and that the Coalition's members would suffer irreparable harm if the school district

---

[6] Neb. Const. art. VII, § 1.

were not enjoined from moving Decatur's grades four through six to Lyons; (3) determine that under the merger petition, the Coalition members had a property and liberty interest in maintaining grades kindergarten through six at Decatur; (4) determine that due process required a vote in accordance with the merger petition before Decatur's grades four through six could be moved to Lyons; (5) determine that Decatur students have an equal protection right to obtain the free instruction "guaranteed by the Nebraska Constitution, statutes and regulations"; (6) find genuine issues of material fact whether the school district had underfunded the Decatur school to its detriment and in comparison to other schools in the district, and whether this underfunding had resulted in "inadequate quality of education" for Decatur students; and (7) find genuine issues of material fact whether the school district had violated the Decatur students' substantive due process rights by interfering with their right to obtain free instruction.

## III. STANDARD OF REVIEW

 Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[7] Concerning questions of law and statutory interpretation, we resolve the issues independently of the lower court's conclusion.[8]

## IV. ANALYSIS

### 1. ENFORCEABILITY OF MERGER AGREEMENT

The parties do not dispute the terms of the merger agreement. They agree paragraph IV(A) provides that the school district maintain a school in Decatur for grades kindergarten through six unless one of two voting requirements were satisfied. Either the school board could vote unanimously to discontinue the school or a majority of the school board and voters from the

---

[7] *Nebraska Coalition for Ed. Equity v. Heineman*, 273 Neb. 531, 731 N.W.2d 164 (2007).

[8] *Japp v. Papio-Missouri River NRD*, 273 Neb. 779, 733 N.W.2d 551 (2007).

former Decatur School District could vote to discontinue it. The parties also do not dispute that the school board's action was taken without obtaining a unanimous vote of the school board or a majority vote of the electors from the former Decatur School District. The Coalition argues that the court incorrectly determined that paragraph IV(A) was unenforceable. It claims merger petitions have the effect of law and school districts are bound by their terms. But the school district argues that the merger petition conflicts with Neb. Rev. Stat. § 79-402.07 (Reissue 1981), which authorized school districts to require only a vote by a majority of *all* legal voters served by a school in the reorganized district and only when a school board seeks to discontinue a school.

The court did not state its reasons for granting summary judgment to the school district on the Coalition's claim that the school district had breached the merger petition. We conclude, however, that the court could have properly granted summary judgment for the school district only if paragraph IV(A) is unenforceable.

 "We have long acknowledged that school boards are creatures of statute, and their powers are limited."[9] Any action taken by a school board must be through either an express or an implied power conferred by legislative grant.[10] School boards can bind a school district only within the limits fixed by the Legislature.[11] A school board's actions exceeding an express or implied legislative grant of power are void.[12] And whether a school board acted within the power conferred upon it by the Legislature presents a question of law.[13]

---

[9] *Busch v. Omaha Pub. Sch. Dist.*, 261 Neb. 484, 488, 623 N.W.2d 672, 676 (2001).

[10] *Id.*

[11] *Spencer v. Omaha Pub. Sch. Dist.*, 252 Neb. 750, 566 N.W.2d 757 (1997).

[12] See, *State ex rel. Fick v. Miller*, 255 Neb. 387, 584 N.W.2d 809 (1998), citing *Spencer v. Omaha Pub. Sch. Dist., supra* note 11; *School Dist. of Waterloo v. Hutchinson*, 244 Neb. 665, 508 N.W.2d 832 (1993).

[13] See *Spencer v. Omaha Pub. Sch. Dist., supra* note 11.

■ The Coalition argues that *State ex rel. Fick v. Miller*,[14] supports its claim that paragraph IV(A) was enforceable. In *State ex rel. Fick*, we held that reorganization petitions have the effect of law and create duties owed to the public. We compared the petition to statutes, city charters, city ordinances, regulations, code of ethics rules, and public franchise contracts.[15] Because they have the force of law, ministerial acts required under the petition can be enforced through a writ of mandamus if the provision is valid. Specifically, we held that an affiliated high school had an enforceable ministerial duty to provide transportation to rural students because two conditions were satisfied. This provision was included in the affiliation petition, and the school board was statutorily authorized to bind the district to such terms. In *State ex rel. Fick*, we explicitly stated:

> Section 79-611(4) grants affiliated school districts the authority to provide free transportation [to students residing in an affiliated Class I district], but neither creates any ministerial legal duty nor provides for the enforcement of any duty. This provision is necessary to provide school boards with the authority to bind their districts to terms like the . . . affiliation petition's [transportation provision].[16]

So when the Legislature has delegated authority to school boards to exercise their discretion, a school board's promise to do so in a reorganization petition can bind the school district. Thus, we look to whether the school board had statutory authority to impose the voting restriction in paragraph IV(A).

We first note that school boards are under no statutory duty to maintain a school in their district.

> The school board of any district maintaining more than one school may close any school or schools within such district and may make provision for the education of children either in another school of the district, in the school of any other district, or by correspondence instruction for such children as may be physically incapacitated for

---

[14] *State ex rel. Fick v. Miller, supra* note 12.

[15] *Id.*

[16] *Id.* at 397, 584 N.W.2d at 817.

traveling to or attending other schools, with the permission of the parent.[17]

Further, the Legislature has given school boards the discretion to establish and classify grades, with the consent and advice of the State Department of Education.[18]

■ When the school boards petitioned for reorganization in 1984, § 79-402.07, in relevant part, provided:

The [reorganization] petition may contain provisions for the holding of school within existing buildings in the newly reorganized district and that a school constituted under the provisions of this section shall be maintained from the date of reorganization unless the legal voters *served by the school* vote by a majority vote for discontinuance of the school.[19]

(Emphasis supplied.) Statutes covering substantive matters in effect at the time of a transaction govern.[20] This language, however, is nearly identical to that used in the current codification at § 79-419(2).

■ In interpreting § 79-402.07, we are guided by familiar canons of statutory construction. Statutory interpretation presents a question of law.[21] Absent anything to the contrary, we will give statutory language its plain and ordinary meaning.[22] We will not read a meaning into a statute that the language does not warrant; neither will we read anything plain, direct, or unambiguous out of a statute.[23]

Section 79-402.07 unambiguously allowed school districts to require a majority vote by all the legal voters *served by a*

---

[17] Neb. Rev. Stat. § 79-1094 (Reissue 2003).

[18] Neb. Rev. Stat. § 79-526 (Reissue 2003). Compare *State ex rel. Shineman v. Board of Education*, 152 Neb. 644, 42 N.W.2d 168 (1950).

[19] See, also, Neb. Rev. Stat. § 79-402.06 (Reissue 1981) (providing that petitions by voters and school boards are subject to same requirements for contents).

[20] See *Bowers v. Dougherty*, 260 Neb. 74, 615 N.W.2d 449 (2000).

[21] *Rohde v. City of Ogallala*, 273 Neb. 689, 731 N.W.2d 898 (2007).

[22] See *City of Elkhorn v. City of Omaha*, 272 Neb. 867, 725 N.W.2d 792 (2007).

[23] See *McCray v. Nebraska State Patrol*, 271 Neb. 1, 710 N.W.2d 300 (2006).

*school* because that is the only restriction on "legal voters." It did not, however, explicitly state whether the "legal voters" must be part of the reorganized district or could be part of the former district.

When confronted with a statutory interpretation issue, we resolve the issue independently and irrespective of the trial court's conclusion.[24] Our role, to the extent possible, is to give effect to the statute's entire language, and to reconcile different provisions of the statute so they are consistent, harmonious, and sensible.[25] When possible, we will try to avoid a statutory construction that would lead to an absurd result.[26] Here, several factors weigh against interpreting § 79-402.07 to support the voting restrictions placed in the reorganization petition.

First, interpreting § 79-402.07 as allowing merging school boards to require a majority vote in a former school district would lead to an absurd result. We would have to conclude that the Legislature intended the surviving school board's decision to discontinue a school to be conditioned upon approval from a school district that has ceased to exist.[27]

Second, the statutory provision at issue consists of a single sentence. The Legislature unambiguously referred to "the holding of school within existing buildings in the *newly reorganized district*."[28] It would be inconsistent to interpret a reference to "legal voters served by the school" in the same sentence to mean voters from the former school district.

Third, we do not read § 79-402.07 as authorizing merging school boards to impose *any* voting restrictions on the surviving school district's discretion. We acknowledge that the disputed sentence provides that "[t]he petition may contain provisions for the holding of school within existing buildings in the newly

---

[24] See *Sjuts v. Granville Cemetery Assn.*, 272 Neb. 103, 719 N.W.2d 236 (2006).

[25] *In re Interest of Tamantha S.*, 267 Neb. 78, 672 N.W.2d 24 (2003).

[26] See, *Livengood v. Nebraska State Patrol Ret. Sys.*, 273 Neb. 247, 729 N.W.2d 55 (2007); *City of Elkhorn v. City of Omaha, supra* note 22.

[27] See *School Dist. of Bellevue v. Strawn*, 185 Neb. 392, 176 N.W.2d 42 (1970).

[28] § 79-402.07 (emphasis supplied).

reorganized district . . . ." But if the Legislature had intended to permit merging school boards to impose any voting restrictions on the surviving school board's discretion, it would not have specified the type of voting restriction that could be imposed. That is, the disputed sentence specifically authorizes a majority vote by the legal voters served by a school for the discontinuance of the school. Reading § 79-402.07 to authorize *any* voting restrictions renders the Legislature's stated restriction meaningless.

Unlike the school transportation statute at issue in *State ex rel. Fick*,[29] § 79-402.07 neither expressly nor impliedly authorized the Decatur and Lyons school boards to require a majority vote by legal voters in the former Decatur School District. Nor did it authorize a unanimous vote by the surviving school board as a condition for discontinuing the Decatur school. Further, § 79-402.07 affirmatively described the circumstance in which a school board could exercise its power to require a vote: the "discontinuance of the school."

The plain and ordinary meaning of "discontinuance" is cessation or closure.[30] As the school district points out, other courts have specifically held that moving particular grades from one school to another is not the discontinuance or closing of a school.[31]

In sum, § 79-402.07 authorized the former school boards to require a vote only if the surviving school board for the reorganized district intended to close a school. It did not authorize the voting restrictions placed in paragraph IV(A). Because the school boards did not have authority to impose the voting requirements in paragraph IV(A), they were void and unenforceable. The Coalition does not allege, nor does the record reflect, that the school board acted in bad faith to circumvent the voting requirement. Instead, it reflects that the school board, faced

---

[29] *State ex rel. Fick v. Miller, supra* note 12.

[30] See Webster's Third New International Dictionary Unabridged 646 (1993).

[31] See, *Lang v. Board of Trustees of Joint School Dist. No. 251*, 93 Idaho 79, 455 P.2d 856 (1969); *Western Area Business, etc. v. Duluth, etc.*, 324 N.W.2d 361 (Minn. 1982); *Choal, et al. v. Lyman Sch. Dist. Bd. of Ed.*, 87 S.D. 682, 214 N.W.2d 3 (1974).

with budget deficits, acted to maintain the Decatur school to the extent the district had resources to do so. The district court did not err in determining that paragraph IV(A) of the reorganization petition was unenforceable.

## 2. PROCEDURAL DUE PROCESS

The Coalition argues the school district denied it due process. It claims that due process required the school board to comply with paragraph IV(A) of the merger petition before moving grades four through six from Decatur to Lyons. Having concluded that those voting restrictions were void, we need not address this argument.

## 3. SUBSTANTIVE DUE PROCESS

The Coalition argues that the district court erred in finding that its members did not have a substantive due process right to obtain the free instruction guaranteed by Nebraska's Constitution, statutes, and regulations. The Coalition's substantive due process argument hinges on Nebraska's free instruction clause. The free instruction clause, in relevant part, provides: "The Legislature shall provide for the free instruction in the common schools of the state of all persons between the ages of five and twenty-one years."[32]

The Coalition does not claim that the school district denied students an education or charged tuition. Instead, it argues—for both its substantive due process and equal protection claims— that the school district has not provided equal facilities or funding to both schools. Thus, consistent with its complaint and arguments to the trial court, we construe the Coalition's argument to be that the free instruction clause guarantees a fundamental right to equal and adequate funding of schools within the same school district.

■ The Coalition contends that the free instruction clause provides a fundamental right to an equal opportunity to obtain a free education "in the context of school funding."[33] Thus, it argues any government action affecting free instruction is subject

---

[32] Neb. Const. art. VII, § 1.

[33] Brief for appellants at 39.

to strict scrutiny. Under strict scrutiny review, the law must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest.[34] The Coalition claims the school district's actions were not narrowly tailored to meeting budget deficits because it did not take similar cost-saving measures at both schools.

The school district, however, argues that this court has never found free instruction to be a fundamental right under the state Constitution. It argues that applying strict scrutiny to school board decisions is contrary to the broad discretion granted to school boards by both this court and the Legislature. We begin by explaining the limits of substantive due process protections.

The due process clause provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law . . . ."[35] This language is similar to the Due Process Clause of the federal Constitution,[36] which provides both procedural and substantive protections.[37] In privacy and parental right claims, we have recognized that besides guaranteeing fair process, the Nebraska due process clause " " "provides heightened protection against government interference with certain fundamental rights and liberty interests." " "[38]

We have recognized that the Due Process Clauses of both the federal and the state Constitutions forbid the government from infringing upon a fundamental liberty interest, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.[39] In both equal protection and due process challenges—when a fundamental

---

[34] *Hamit v. Hamit*, 271 Neb. 659, 715 N.W.2d 512 (2006).

[35] Neb. Const. art. I, § 3.

[36] See U.S. Const. amend. XIV, § 1.

[37] See, e.g., *Harrah Independent School Dist. v. Martin*, 440 U.S. 194, 99 S. Ct. 1062, 59 L. Ed. 2d 248 (1979).

[38] *Hamit v. Hamit, supra* note 34, 271 Neb. at 665, 715 N.W.2d at 520, quoting *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Accord *State v. Senters*, 270 Neb. 19, 699 N.W.2d 810 (2005).

[39] See *In re Adoption of Baby Girl H.*, 262 Neb. 775, 635 N.W.2d 256 (2001), citing *Washington v. Glucksberg*, 521 U.S. 702, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997).

right or suspect classification is not involved—a government act is a valid exercise of police power if it is rationally related to a legitimate governmental purpose.[40]

 The federal Constitution does not provide a fundamental right to education.[41] Nevertheless, the Coalition argues that the free instruction clause of the Nebraska Constitution provides a fundamental right to equal educational funding. Its argument is twofold. First, it contends that our decision in *Kolesnick v. Omaha Pub. Sch. Dist.*,[42] "stands for the proposition that education is a fundamental right in Nebraska with regard to school financing."[43]

### (a) We Did Not Recognize a Fundamental Right to Education Funding in *Kolesnick*

In *Kolesnick*, we held that in student discipline cases, "no fundamental right to education exists in Nebraska," "which would trigger strict scrutiny analysis whenever a student's misconduct results in expulsion for the interest of safety."[44] We concluded that the free instruction clause did not provide such a right and distinguished other cases involving the free instruction clause. But the Coalition plucks the following language from *Kolesnick*[45]:

> We have not construed [the free instruction clause] language in the context of student discipline to mean that a fundamental right to education exists in this state . . . . Rather, we have construed the term "free instruction" in right to education cases as pertinent to the issue of

---

[40] See, *Le v. Lautrup*, 271 Neb. 931, 716 N.W.2d 713 (2006); *State v. Champoux*, 252 Neb. 769, 566 N.W.2d 763 (1997). Compare *Washington v. Glucksberg, supra* note 39, with *Vacco v. Quill*, 521 U.S. 793, 117 S. Ct. 2293, 138 L. Ed. 2d 834 (1997).

[41] *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973).

[42] *Kolesnick v. Omaha Pub. Sch. Dist.*, 251 Neb. 575, 558 N.W.2d 807 (1997).

[43] Brief for appellants at 38.

[44] *Kolesnick v. Omaha Pub. Sch. Dist., supra* note 42, 251 Neb. at 581-82, 558 N.W.2d at 813.

[45] *Id.* at 581, 558 N.W.2d at 813.

the constitutionality of school financing, including collection of fees, tuition, and taxes. See, *Banks v. Board of Education of Chase County*[46]; *Tagge v. Gulzow*[47]; *State, ex rel. Baldwin, v. Dorsey*[48]; *Martins v. School District*[49]. See, also, *Doe v. Superintendent of Sch[ools] of Worcester*[50].

The Coalition's reliance on our statement that the free instruction clause is "pertinent to the issue of the constitutionality of school financing" is misplaced. We clearly did not state that students have a fundamental right to equal educational funding in *Kolesnick*, and none of the cases cited in *Kolesnick* support that position.

Recently, we cited three of the cases relied on in *Kolesnick*: *Tagge v. Gulzow*,[51] *State, ex rel. Baldwin, v. Dorsey*,[52] and *Martins v. School District*.[53] Those cases illustrate that the only qualitative, constitutional standards for public schools we could enforce under the free instruction clause are that "education in public schools must be free and available to all children."[54] In *Banks v. Board of Education of Chase County*,[55] we held that a school district's statutory power to levy taxes was not an unlawful delegation of legislative authority. We reasoned that the purpose of school districts is "'to fulfill the Legislature's duty "to encourage schools and the means of

---

[46] *Banks v. Board of Education of Chase County*, 202 Neb. 717, 277 N.W.2d 76 (1979).

[47] *Tagge v. Gulzow*, 132 Neb. 276, 271 N.W. 803 (1937).

[48] *State, ex rel. Baldwin, v. Dorsey*, 108 Neb. 134, 187 N.W. 879 (1922).

[49] *Martins v. School District*, 101 Neb. 258, 162 N.W. 631 (1917).

[50] *Doe v. Superintendent of Schools of Worcester*, 421 Mass. 117, 653 N.E.2d 1088 (1995).

[51] *Tagge v. Gulzow, supra* note 47.

[52] *State, ex rel. Baldwin, v. Dorsey, supra* note 48.

[53] *Martins v. School District, supra* note 49.

[54] *Nebraska Coalition for Ed. Equity v. Heineman, supra* note 7, 273 Neb. at 550, 731 N.W.2d at 179.

[55] *Banks v. Board of Education of Chase County, supra* note 46.

instruction" . . . .' "[56] Like this court in *Kolesnick*, in *Doe v. Superintendent of Schools of Worcester*,[57] the Massachusetts Supreme Court was dealing with a student disciplinary case. There, the court explicitly stated that it had never held students have a fundamental right to education. We conclude that *Kolesnick* is not controlling.

### (b) *Rodriguez* Test Is Inapplicable to Nebraska's Constitution

The crux of the Coalition's alternative argument is that the free instruction clause explicitly states the Legislature shall provide a free public education to persons between the ages of 5 and 21. Thus, it argues the Nebraska Constitution provides a fundamental right to educational funding.

▮ Fundamental rights have been defined as those that are "'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'"[58] The U.S. Supreme Court has stated that

> in addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the rights to marry, . . . to have children, . . . to direct the education and upbringing of one's children, . . . to marital privacy, . . . to use contraception, . . . to bodily integrity, . . . and to abortion . . . .[59]

The Coalition relies on the U.S. Supreme Court's statement in *San Antonio School District v. Rodriguez*.[60] There, the Court stated that the key to discovering whether education is fundamental "lies in assessing whether there is a right to education explicitly or implicitly guaranteed by the Constitution."[61] Yet many state courts have rejected the *Rodriguez* test for

---

[56] *Id.* at 721, 277 N.W.2d at 79, quoting *Campbell v. Area Vocational Technical School No. 2*, 183 Neb. 318, 159 N.W.2d 817 (1968).

[57] See *Doe v. Superintendent of Schools of Worcester, supra* note 50.

[58] *Washington v. Glucksberg, supra* note 39, 521 U.S. at 721, quoting *Palko v. Connecticut*, 302 U.S. 319, 58 S. Ct. 149, 82 L. Ed. 288 (1937).

[59] *Id.*, 521 U.S. at 720 (citations omitted).

[60] See *San Antonio School District v. Rodriguez, supra* note 41.

[61] *Id.*, 411 U.S. at 33.

determining whether education is a fundamental right under their state constitution.[62] These courts have reasoned that "state constitutions, unlike the federal constitution, are not of limited or delegated powers and are not restricted to provisions of fundamental import; consequently, whether a right is fundamental should not be predicated on its explicit or implicit inclusion in a state constitution."[63]

Unlike the federal Constitution, state constitutions are not an enumerated list of the government's limited powers. States have all powers not delegated to the federal government nor prohibited to them by the U.S. Constitution.[64] State constitutions include provisions related to providing government services at the local level. Many state provisions for government services "could as well have been left to statutory articulation" under the Legislature's plenary power and are not considered implicit to our concept of ordered liberty.[65]

Accordingly, an express legislative power or duty to provide services in a state constitution pales in comparison to constitutional provisions prohibiting the government's interference with personal rights. As the *Rodriguez* Court recognized, there is a significant difference between a claim that government action has infringed upon the exercise of a personal right or liberty and a claim that authorized government action fails to go far enough. In the latter case, there would be no logical limitation on the

---

[62] See, e.g., *Hornbeck v. Somerset Co. Bd. of Educ.*, 295 Md. 597, 458 A.2d 758 (1983) (citing cases).

[63] *Id.* at 647, 458 A.2d at 785. Accord, *Lujan v. Colorado State Bd. of Educ.*, 649 P.2d 1005 (Colo. 1982); *McDaniel v. Thomas*, 248 Ga. 632, 285 S.E.2d 156 (1981); *Idaho Schools for Equal Educ. v. Evans*, 123 Idaho 573, 850 P.2d 724 (1993); *Levittown USFD v Nyquist*, 57 N.Y.2d 27, 439 N.E.2d 359, 453 N.Y.S.2d 643 (1982); *Bd. of Edn. v. Walter*, 58 Ohio St. 2d 368, 390 N.E.2d 813 (1979); *Olsen v. State ex rel Johnson*, 276 Or. 9, 554 P.2d 139 (1976). See, also, *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 710 N.E.2d 798, 238 Ill. Dec. 1 (1999); *City of Pawtucket v. Sundlun*, 662 A.2d 40 (R.I. 1995).

[64] See U.S. Const. amend. X.

[65] See *Levittown USFD v Nyquist, supra* note 63, 57 N.Y.2d at 44 n.5, 439 N.E.2d at 366 n.5, 453 N.Y.S.2d at 650 n.5. See, also, *Bd. of Edn. v. Walter, supra* note 63.

State's duties to provide services if a court were to conclude that such duties conferred personal liberty interests and apply strict scrutiny analysis.[66]

■ Moreover, a state constitutional provision is not elevated to a fundamental right solely because it mandates legislative action.[67] For example, the Nebraska Constitution also requires the Legislature to provide for the organization of townships[68] and corporations.[69] Yet these provisions do not create fundamental rights.[70]

Other courts have pointed out the vulnerability of the *Rodriguez* test in considering property rights.[71] Although the right to acquire and hold property is an interest protected by the federal and state Constitutions, "'"that right is not a likely candidate for such preferred treatment."'"[72]

We also agree that no distinction exists upon which to elevate the funding of education to a fundamental interest over the funding of other vital state services: services that are also provided through the state's political subdivisions created under constitutional provisions. Considering the potential reach of *Rodriguez*, courts have concluded that other state services "could, within the *Rodriguez* formulation of fundamental rights, be deemed implicitly guaranteed in most state constitutions."[73] Even more illuminating, the *Rodriguez* court recognized the potential fallout of applying strict scrutiny to school funding decisions. "In such a complex arena in which no perfect alternatives exist, the Court does well not to impose too rigorous a standard of scrutiny lest all local fiscal schemes become subjects of criticism under the

---

[66] Compare *San Antonio School District v. Rodriguez,* supra note 41.

[67] See *Lujan v. Colorado State Bd. of Educ., supra* note 63.

[68] See Neb. Const. art. IX, § 5.

[69] See Neb. Const. art. XII, § 1.

[70] See *Dwyer v. Omaha-Douglas Public Building Commission,* 188 Neb. 30, 195 N.W.2d 236 (1972).

[71] See, e.g., *Lujan v. Colorado State Bd. of Educ., supra* note 63.

[72] *Id.* at 1017 n.12. See, also, *Nelsen v. Tilley,* 137 Neb. 327, 289 N.W. 388 (1939).

[73] See, e.g., *Hornbeck v. Somerset Co. Bd. of Educ., supra* note 62, 295 Md. at 649, 458 A.2d at 785.

Equal Protection Clause."[74] Because the Nebraska Constitution is not an enumeration of limited powers,[75] we conclude that it would be inappropriate to apply the U.S. Supreme Court's test in *Rodriguez* to our constitution.

### (c) Nebraska's Constitution Does Not Confer a Fundamental Right to Equal and Adequate Funding of Schools

 No court questions the vital importance of public education in a democratic society. But "[a] heartfelt recognition and endorsement of the importance of an education does not elevate a public education to a fundamental interest warranting strict scrutiny."[76] No doubt Nebraska's children are entitled to a free education. Nevertheless, we recently concluded that prudential and practical considerations require that we not intervene in fiscal policy decisions regarding education.[77] In *Nebraska Coalition for Ed. Equity v. Heineman* (*Nebraska Coalition*),[78] we specifically stated that the framers of the Nebraska Constitution rejected language that required uniformity between schools. We concluded that the Nebraska Constitution committed the determination of adequate school funding solely to the Legislature. We further reasoned that the relationship between school funding and educational quality involved policy determinations that were inappropriate for judicial resolution.[79] We therefore held in *Nebraska Coalition* that adequate funding of public schools is not a judicially enforceable right under the free instruction clause.

The Coalition cites decisions in which state courts have held their state constitutions provide a fundamental right to equal educational funding. We conclude, however, that these decisions are unpersuasive. Two of these states have education

---

[74] *San Antonio School District v. Rodriguez, supra* note 41, 411 U.S. at 41.

[75] See, e.g., *Pony Lake Sch. Dist. v. State Committee for Reorg.*, 271 Neb. 173, 710 N.W.2d 609 (2006).

[76] *Lujan v. Colorado State Bd. of Educ., supra* note 63, 649 P.2d at 1018.

[77] *Nebraska Coalition for Ed. Equity v. Heineman, supra* note 7.

[78] *Id.*

[79] Accord *San Antonio School District v. Rodriguez, supra* note 41.

articles that are more comprehensive[80] than the "paucity of standards" contained in Nebraska's free instruction clause.[81] Another state constitution contained provisions that the court construed to require equal distribution of school funds,[82] which are similar to provisions the people of Nebraska omitted or deleted from our constitution.[83] The Coalition also cites a decision by the Alabama Supreme Court.[84] But we have noted that the Alabama Supreme Court changed course in 2002, holding that a constitutional challenge to school funding presented a nonjusticiable issue and dismissing the action.[85]

It is true that the California and North Dakota Supreme Courts have determined their state constitutions provide a fundamental right to equal educational funding despite education articles that required only a free public school system.[86] These decisions, however, are contrary to the greater weight of authority[87] and, more important, they are contrary to our decision in *Nebraska Coalition.*

In *Nebraska Coalition,* we implicitly concluded that the free instruction clause does not confer a fundamental right to adequate funding of schools, or we would have decided the

---

[80] See, *Pauley v. Kelly,* 162 W. Va. 672, 255 S.E.2d 859 (1979); *Washakie Co. Sch. Dist. No. One v. Herschler,* 606 P.2d 310 (Wyo. 1980).

[81] See *Nebraska Coalition for Ed. Equity v. Heineman, supra* note 7, 273 Neb. at 552, 731 N.W.2d at 180.

[82] *Horton v. Meskill,* 172 Conn. 615, 376 A.2d 359 (1977).

[83] See *Nebraska Coalition for Ed. Equity v. Heineman, supra* note 7.

[84] *Opinion of the Justices,* 624 So. 2d 107 (Ala. 1993).

[85] *Nebraska Coalition for Ed. Equity v. Heineman, supra* note 7, citing *Ex Parte James,* 836 So. 2d 813 (Ala. 2002).

[86] *Serrano v. Priest,* 5 Cal. 3d 584, 487 P.2d 1241, 96 Cal. Rptr. 601 (1971). See, also, *Serrano v. Priest,* 18 Cal. 3d 728, 557 P.2d 929, 135 Cal. Rptr. 345 (1976); *Bismarck Public School Dist. 1 v. State,* 511 N.W.2d 247 (N.D. 1994).

[87] See, *Lujan v. Colorado State Bd. of Educ., supra* note 63; *McDaniel v. Thomas, supra* note 63; *Idaho Schools for Equal Educ. v. Evans, supra* note 63; *Lewis E. v. Spagnolo, supra* note 63; *Hornbeck v. Somerset Co. Bd. of Educ., supra* note 62; *Levittown USFD v Nyquist, supra* note 63; *Bd. of Edn. v. Walter, supra* note 63; *Olsen v. State ex rel Johnson, supra* note 63; *City of Pawtucket v. Sundlun, supra* note 63.

issue. We also noted that the U.S. Supreme Court had held open the possibility that some 14th Amendment claims would be nonjusticiable because they are too enmeshed with one of the political question tests. That is the case here. The free instruction clause does not mandate equal funding of schools. As noted, there is no uniformity clause in the Nebraska Constitution, and there is no other provision specifying the manner or amount of school funding that must be provided for schools. Instead, the Nebraska Constitution commits funding decisions to the Legislature.[88] The Legislature, in turn, has entrusted local budget decisions to the school boards.[89] Holding that the Nebraska Constitution provides a fundamental right to equal school funding of schools would affect discretionary legislative decisions at both local and state levels. So, the same prudential considerations that weighed against interfering with the Legislature's determinations of adequate school funding are implicated by the Coalition's equal funding claim. We conclude that the free instruction clause does not provide a fundamental right to equal and adequate funding of schools.

As noted, the Legislature has statutorily delegated to school boards the duty to determine which schools to operate.[90] School boards also have authority to determine, with the consent and advice of the State Department of Education, which grades to offer at schools.[91] In constitutional challenges to school funding decisions, we conclude that the appropriate level of scrutiny is whether the challenged school funding decisions are rationally related to a legitimate government purpose.

### (d) The School Board's Actions Were Rationally Related to a Legitimate Government Purpose

The Coalition does not contest whether the school board's actions were rationally related to a legitimate government interest. The thrust of its argument is that the Nebraska Constitution

---

[88] See *Nebraska Coalition for Ed. Equity v. Heineman, supra* note 7.

[89] See *Werth v. Buffalo County Board of Equalization,* 187 Neb. 119, 188 N.W.2d 442 (1971).

[90] § 79-1094.

[91] § 79-526.

provides a fundamental right to equal and adequate educational funding, an argument which we reject. The school district contends that its actions to reduce costs, including adjusting its classes so that small classes could be combined, were rationally related to its goal of providing an education for its students. We agree.

At the temporary injunction hearing, Forsberg, the superintendent, was asked during cross-examination why the board had not chosen to save money by transporting the students from Lyons to Decatur. He responded that the board had considered that possibility. But because the secondary school was at Lyons, the Lyons facility had to be heated and operated anyway. He stated that because there were more students at Lyons than at Decatur, two busses, instead of one, would be required to transport students from Lyons to Decatur. He also said that the remaining students at Decatur in grades kindergarten through three would be taught in one "K-3 center," allowing the district to reduce staff costs and reduce heating and maintenance costs, for a total savings of about $200,000. Because the school board was confronted with increasing budget deficits, we conclude that its actions were rationally related to its legitimate goal of providing an education to all children in the district. Because the Coalition has failed to show that a heightened level of scrutiny applies to the school district's decisions or that those decisions were not rationally related to a legitimate government purpose, its substantive due process claim must fail.

### 4. EQUAL PROTECTION

The Nebraska Constitution and the U.S. Constitution have identical requirements for equal protection challenges.[92] And we have specifically held that the action of a school board may implicate the Equal Protection Clause.[93] The Equal Protection Clause requires the government to treat similarly

---

[92] *Kenley v. Neth*, 271 Neb. 402, 712 N.W.2d 251 (2006).

[93] *Maack v. School Dist. of Lincoln*, 241 Neb. 847, 491 N.W.2d 341 (1992), citing *Columbus Board of Education v. Penick*, 443 U.S. 449, 99 S. Ct. 2941, 61 L. Ed. 2d 666 (1979).

situated people alike.[94] It does not forbid classifications; it simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike.[95]

If a legislative classification involves either a suspect class or a fundamental right, courts will analyze the classification with strict scrutiny.[96] A suspect class is one that has been "'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment . . . as to command extraordinary protection from the majoritarian political process.'"[97] The Coalition does not allege that the school district discriminated against a "suspect class." And we have already determined that the Nebraska Constitution does not provide a fundamental right to equal and adequate funding of schools.

When a classification created by state action does not jeopardize the exercise of a fundamental right or categorize because of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.[98] Under the rational basis test, whether an equal protection claim challenges a statute or some other government act or decision, the burden is upon the challenging party to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification.[99]

"[T]he Equal Protection Clause does not require absolute equality or precisely equal advantages."[100] Social and economic measures violate the Equal Protection Clause only when the varying treatment of different groups or persons is

---

[94] *Id.*, citing *Nordlinger v. Hahn*, 505 U.S. 1, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992).

[95] *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 663 N.W.2d 43 (2003).

[96] *Id.* See *State v. Senters, supra* note 38.

[97] *State v. Michalski*, 221 Neb. 380, 386, 377 N.W.2d 510, 515 (1985), quoting *San Antonio School District v. Rodriguez, supra* note 41.

[98] See, *Maack v. School Dist. of Lincoln, supra* note 93, citing *Nordlinger v. Hahn, supra* note 94.

[99] *Smith v. City of Chicago*, 457 F.3d 643 (7th Cir. 2006). Compare *State v. Senters, supra* note 38.

[100] *San Antonio School District v. Rodriguez, supra* note 41, 411 U.S. at 24.

so unrelated to the achievement of any legitimate purposes that a court can only conclude that the Legislature's actions were irrational.[101]

As we did in our substantive due process analysis, we conclude that the school board has shown a rational basis for its actions. Therefore, the Coalition's equal protection claim must similarly fail.

## V. CONCLUSION

We conclude that the district court did not err in determining that the voting restrictions placed in the reorganization petition were unenforceable under Neb. Rev. Stat. § 79-402 (Reissue 1981). The school board of the reorganized district, therefore, did not breach the reorganization petition by failing to obtain the specified votes before moving grades four through six from the Decatur school to the Lyons school.

We further conclude that the school board's actions did not violate the Coalition members' substantive due process or equal protection rights. The free instruction clause of the Nebraska Constitution does not confer a fundamental right to equal and adequate funding for schools. The Coalition has not claimed that the school board's actions discriminated against a suspect class. Thus, under the rational basis test, the school district, confronted with increasing budget deficits, has shown that its actions were rationally related to its legitimate goal of providing an education to all children in the district.

AFFIRMED.

---

[101] *Gourley v. Nebraska Methodist Health Sys., supra* note 95; *State v. Atkins*, 250 Neb. 315, 549 N.W.2d 159 (1996).